STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0261

ARLISA BATISTE

VERSUS

ERIN COVINGTON, LP, PROVIDENT REALTY ADVISORS, INC., AND
ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.

**Judgment Rendered: DEC 1 1 2019**

* * * * * *

On appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2016-11913

Honorable Martin E. Coady, Judge Presiding

* * * * * *

| | |
|---|---|
| Hugh B. Exnicios<br>Folsom, LA | Counsel for Plaintiff/Appellant<br>Arlisa Batiste |
| | |
| Matthew F. Morgan<br>Sidney W. Degan, III<br>Travis L. Bourgeois<br>New Orleans, LA | Counsel for Defendant/Appellee<br>Erin Covington, LP, Provident<br>Realty Advisors, Inc., and<br>Associated Industries Insurance<br>Company, Inc. |

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.[1]

---

[1] Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

Whipple, J. dissents and assigns reasons.
Crain (J). Concurry

**GUIDRY, J.**

Plaintiff, Arlisa Batiste, appeals from a judgment that dismissed her claims and granted summary judgment in favor of defendants, Erin Covington, LP; Provident Realty Advisors, Inc.; and Associated Industries Insurance Company, Inc. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

On May 10, 2015, Ms. Batiste, who was a resident of Pine Crest Apartments, slipped and fell in the parking lot of the apartment complex "on a certain section of the concrete or cement which was broken, cracked and covered in a wet slippery substance which appeared to resemble motor oil." Ms. Batiste thereafter filed suit against the owner of the apartment complex, Erin Covington, LP, individually and doing business as Pine Crest Apartments; the apartment complex's parent company, Provident Realty Advisors, Inc.; and their insurer, Associated Industries Insurance Company, Inc. (collectively "defendants"). Ms. Batiste claimed the defendants were negligent in their failure to keep the premises of the parking lot safe for use, repair the broken cement or concrete, and properly assess the condition of the parking lot, and were thus liable for the damages she sustained. The defendants, in their answer to the petition, denied liability. Later, on April 18, 2018, the defendants filed a motion for summary judgment, asserting that Ms. Batiste had no evidence of actual or constructive notice and therefore, she was not able to factually support at least one essential element of her claim.

On October 24, 2018, Ms. Batiste filed an opposition to the defendants' motion for summary judgment, arguing that she had made a prima facie showing of her case as evidenced by the exhibits attached to her opposition. Ms. Batiste

also filed a motion to continue the defendants' summary judgment hearing[2] and a countervailing motion for summary judgment.

At the hearing on the defendants' motion for summary judgment, the trial court denied Ms. Batiste's motion to continue, reasoning that two continuances had already been granted, and proceeded with the hearing on the defendants' motion. After considering the evidence presented and arguments of the counsel, the trial court issued reasons for judgment finding that Ms. Batiste had failed to present evidence to support a finding that the defendants had actual or constructive notice of the alleged defective condition in the parking lot and therefore, she was unable to meet her burden of proof under La. C.C. art. 2317.1. The trial court signed a judgment on November 29, 2018, granting summary judgment in favor of the defendants and dismissing Ms. Batiste's claims with prejudice. Ms. Batiste now appeals from the trial court's judgment.

## ASSIGNMENTS OF ERROR[3]

I.   The trial court erred in granting the defendants' motion for summary judgment, adopting the incorrect law, and failing to recognize the plaintiff's valid theories of strict liability and negligence.

II.  The trial court erred in failing to recognize that the sworn testimony of the 1442 Corporate Representative established that the defendants had a very poor approach to the inspection and discovery of problems, risks, and defects on their property, and that their failure subjects them to liability under the theories of strict liability and negligence.

III. The trial court erred in failing to find that there was a "defect" in the defendants' property under the law, so as to allow strict liability to be applied to this case.

---

[2] Pleadings regarding Ms. Batiste's motion to continue are not included in the record, but the trial court minutes reflect that such a motion was filed by Ms. Batiste.

[3] On appeal, Ms. Batiste raises several assignments of error regarding the "denial" of her motion for summary judgment. However, we note from our review of the record that Ms. Batiste's motion was never set for hearing and was not before the trial court at the October 30, 2018 hearing on defendants' motion for summary judgment. Therefore, because Ms. Batiste's motion was not before the trial court, we do not address her assignments of error regarding the "denial" of her motion for summary judgment.

## DISCUSSION

### Defendants' Motion for Summary Judgment

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. M/V Resources LLC v. Louisiana Hardwood Products LLC, 16-0758, p. 8 (La. App. 1st Cir. 7/26/17), 225 So. 3d 1104, 1109, writ denied, 17-1748 (La. 12/5/17), 231 So. 3d 624. A motion for summary judgment is properly granted if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); M/V Resources LLC, 16-0758 at p. 8, 225 So. 3d at 1109.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Bice v. Home Depot U.S.A., Inc., 16-0447, p. 3 (La. App. 1st Cir. 12/22/16), 210 So. 3d 315, 318. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. M/V Resources LLC, 16-0758 at p. 9, 225 So. 3d at 1109.

On a motion for summary judgment, the burden of proof is on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or

4

that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the adverse party fails to do so, there is no genuine issue of material fact and summary judgment will be granted. Neighbors Federal Credit Union v. Anderson, 15-1020, p. 10 (La. App. 1st Cir. 6/3/16), 196 So. 3d 727, 734. Moreover, as noted in La. C.C.P. art. 967(B), the opposing party cannot rest on the mere allegations in his pleadings, but his response, by affidavits, depositions, or answers to interrogatories, must set forth specific facts showing there is a genuine issue for trial.

Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Nash v. Rouse's Enterprises, LLC, 15-1101, p. 3 (La. App. 1st Cir. 2/26/16), 191 So. 3d 599, 600-01. In this case, Ms. Batiste asserts negligence against the defendants based upon allegations that the defendants failed to repair the broken cement or concrete in the parking lot and failed to properly assess the condition of the parking lot and keep the premises safe for use. Ms. Batiste, thus, has raised issues governed by La. C.C. art. 2317.1,[4] which defines the basis for delictual liability for defective things and provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

---

[4] Ms. Batiste states, in her brief, that the defendants are strictly liable. However, the 1996 legislation enacting La. C.C. art. 2317.1 and amending La. C.C. art. 2322, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretation of the pre-1996 versions of La. C.C. arts. 2317 and 2322. Broussard v. Voorhies, 06-2306, p. 4 (La. App. 1st Cir. 9/19/07), 970 So. 2d 1038, 1042, writ denied, 07-2052 (La. 12/14/07), 970 So. 2d 535. A more appropriate term now for liability under La. C.C. arts. 2317.1 and 2322 might be "custodial liability," but such liability is nevertheless predicated upon a finding of negligence. Broussard, 06-2306 at p. 4, 970 So. 2d at 1042.

Accordingly, for liability to attach under La. C.C. art. 2317.1, Ms. Batiste had the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property had a condition that created an unreasonable risk of harm; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. Tomaso v. Home Depot U.S.A., Inc., 14-1467, p. 5 (La. App. 1st Cir. 6/5/15), 174 So. 3d 679, 682. Actual or constructive knowledge (or notice) of the defect means that the party either knew of the defect or, in the exercise of reasonable care, should have known of the defect. Alvarado v. Lodge at the Bluffs, LLC, 16-0624, pp. 6-7 (La. App. 1st Cir. 3/29/17), 217 So. 3d 429, 433, writ denied, 17-0697 (La. 6/16/17) 219 So. 3d 340. The concept of constructive knowledge under La. C.C. art. 2317.1 imposes a reasonable duty to discover apparent defects in the thing in the defendant's *garde* or legal custody. Alvarado, 16-0624 at p. 7, 217 So. 3d at 433.

Here, the defendants contend that Ms. Batiste cannot prove that the defendants had actual or constructive notice of any defective condition. The defendants assert in their motion and supporting documentation that there is no evidence of the source of the alleged substance that caused Ms. Batiste's fall, no evidence of prior complaints to management about the alleged substance, no evidence of the alleged substance in the parking lot before plaintiff's fall, and no evidence of any prior or subsequent parking lot accidents. In addition, the defendants assert that Ms. Batiste stated, through her own deposition testimony, that an oil/water mixture in the defendants' parking lot caused her to fall, that she had never seen the substance before, and that she does not know the source of the alleged substance. Considering this evidence, we find that the defendants satisfied their burden of pointing out an absence of factual support for an essential element

of Ms. Batiste's claim. Therefore, the burden shifted to Ms. Batiste to establish that she could satisfy her burden of proof at trial.

In opposition to the defendants' motion, Ms. Batiste offered an affidavit from an expert architect, Ladd Ehlinger, who opined that the cause of Ms. Batiste's slip and fall was more probably than not an ongoing, underground piping leak that was left unattended and unrepaired. Ms. Batiste also offered deposition testimony from Julie Valley, Provident Realty Advisors' Asset Manager, her own affidavit, and affidavits from two eye witnesses to her fall.[5]

The affidavits of Ms. Batiste's two eye witnesses establish that Ms. Batiste fell in the parking lot of the apartment complex; that there was a watery, oily substance in the area where Ms. Batiste fell; and that a slimy, watery, oily substance covered the back of Ms. Batiste's clothes after the fall. However, while these affidavits may establish that Ms. Batiste fell on a substance in the parking lot, they do not establish how long that substance was present in the parking lot for purposes of establishing that the defendants had actual or constructive notice of the substance. Furthermore, the affidavit of Ms. Batiste merely establishes that she was injured as a result of her fall and offers no evidence regarding the actual or constructive notice of the defendants. The deposition testimony of Ms. Valley, establishes that, generally, on a quarterly basis, she flies in from Texas and drives through the property, looking at the exterior and breezeways, "mostly from a big picture prospective." Ms. Valley also stated that she reports back to the regional property manager with comments and questions after the inspection, and that she does not handle the day-to-day operations of the property.

Ms. Batiste asserts that the inspection procedures of the defendants through Provident Realty Advisors were deficient, and thus, that the defendants failed in

---

[5] Ms. Batiste also attached her Notice of the 1442 Deposition of the Defendants and evidence to establish that Erin Covington, LP owned the property.

their duty to exercise reasonable care in discovering the defect. However, from our review of the record, we disagree. First, the evidence establishes that Provident Realty Advisors indeed had a regular inspection routine, and the record is devoid of any evidence establishing that a reasonable "parent company" would have acted any differently in its attempts to discover apparent defects. See Nicholson v. Horseshoe Entertainment, 46,081, p. 8 (La. App. 2d Cir. 3/2/11), 58 So. 3d 565, 570, writ denied, 11-0679 (La. 5/20/11) 63 So. 3d 980 (wherein the court noted that the plaintiff failed to show that more frequent inspections were an industry standard or were needed in that specific case). Second, it is clear from the entirety of Ms. Valley's deposition testimony submitted into evidence by the defendants, that a third party contractor[6] had oversight of the day-to-day property management of the apartment complex. There is no evidence in the record of actual notice on the part of the third party property management company, nor is there evidence in connection to the inspection routine, or lack thereof, of the third party property management company to establish that the defendants failed in their duty to discover defects. In sum, there is no evidence in the record that the apartment complex, through Provident Realty Advisors or the third party property management company, failed to exercise reasonable care in their inspection of the property, thereby establishing constructive notice. We further note that there is no evidence in the record with reference to complaints, observations, or repairs of any alleged defect in the parking lot prior to Ms. Batiste's fall. Accordingly, regarding the defendants' inspection procedures, we find that that Ms. Batiste has failed to present evidence creating a genuine issue of material fact to defeat the defendants' motion for summary judgment.

---

[6] The third party property management company was not named as a defendant in this lawsuit.

8

Next, we address the expert affidavit of Mr. Ehlinger. In his affidavit, Mr. Ehlinger states, in part:

3. That he was present and did perform an inspection of the accident site on August 23, 2018, which was a hot dry day (following a sequence of hot dry days) at 2000 Pine Crest Avenue in Covington, Louisiana;

\*\*\*

5. That he has reviewed photographs taken by the [p]laintiff, by a witness, Barbara Montgomery, and by [p]laintiff's counsel;

6. That of the many pictures, those that are most relevant to his expert opinion in this affidavit are those … attached as exhibits to this affidavit:

Exhibit 2 – Photo taken by witness Barbara Montgomery of accident site showing a clear flow of water from beneath the surface;

Exhibit 3 – Photo taken by witness Barbara Montgomery of accident site showing formation of green slime at the location where [p]laintiff lost her footing and fell and further shows accumulation of mud all next to dry concrete area;

Exhibit 4 – Photo taken by witness Barbara Montgomery of accident site showing same green slime and mud collection where Plaintiff fell and adjacent dry concrete area;

Exhibit 5 – Photo taken by [p]laintiff on day of Ehlinger inspection of accident site shows the [c]omplex maintenance man, Robert Trapani, brushing away the stream of water that is still present on August 23, 2018 when there had been no rain for several days and all areas of the parking lot are dry except the area where [p]laintiff's accident took place.

7. That…it is his expert professional opinion that more likely [than] not there has been an ongoing underground leak at the area of the accident site … and that such leak was present at the time of the accident and more likely than not was present for some time prior to the accident based on the earliest photographs taken after the accident which shows a build up of mud, oil and the formation of slime clearly seen in the early photographs and the reports of the eye witnesses who felt the material on the ground;

8. That the cause of this accident and [p]laintiff's slip and fall was, more probable than not, the underground piping leak described above that apparently at the time of his inspection, and based on his personal observations, has been left unattended and unrepaired at least some time prior to the [p]laintiff's accident up to the inspection date of August 23, 2018[.]

Although the expert affidavit relies on photographs of water and mud and green slime build-up, and concludes that a defect existed at least some time prior to Ms. Batiste's fall, the affidavit presents no factual evidence to establish that the defendants knew or should have known about a defective condition. Most importantly, the affidavit does not indicate the date on which the photographs of the mud and green slime build-up were taken in relation to Ms. Batiste's May 2015 fall, such that Ms. Batiste could demonstrate to the court that the condition existed for such a period of time prior to her fall that the defendants should have been on notice.

In Russell v. Forest Isle, Inc., 18-0602, p. 5 (La. App. 4th Cir. 12/5/18), 261 So. 3d 47, 51, the court quoted the trial court's oral reasons for judgment, which stated:

> And I realize you are in a tenuous situation simply because you have a picture, don't know when it was taken. We know what happened at the time or around the time she stepped on it. But plaintiff, unfortunately, has failed to carry her burden on the summary judgment of providing factual support sufficient to create a genuine issue of material fact. Plaintiff relies on her own deposition and photographs taken shortly after the fall. However, she has failed to provide any evidence that the defendant should have known about a defective condition of the step and failed to act reasonably to cure that condition. I have no choice but to grant his motion for summary judgment.

See also Broussard, 06-2306 at pp. 9-10, 970 So. 2d at 1044-1045 (wherein this court explained there was testimony that the circuit breaker box might have been inundated by flood waters; however, "there was no evidence of the duration or actual effect of any such inundation on it").

The expert affidavit does not provide factual support to establish that the defendants knew or should have known about a defective condition prior to Ms. Batiste's fall. The expert affidavit, therefore, does not create a genuine issue of material fact to defeat the defendants' motion for summary judgment.

Having reviewed the evidence before us, and construing the factual interferences reasonably drawn therefrom in favor of the opponent of the motion for summary judgment, we must conclude that the factual support offered by the plaintiff is insufficient to establish a genuine issue of material fact under La. C.C. art. 2317.1. See Willis v. Medders, 00-2507, p. 2 (La. 12/8/00), 775 So. 2d 1049, 1050 (per curiam). Because Ms. Batiste is lacking evidence of an essential element of her claim, she will be unable to meet her burden of proof at trial. Accordingly, we find no merit in the assertion that the trial court erred in granting the defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court that granted summary judgment and dismissed the claims of Arlisa Batiste against defendants, Erin Covington, LP, individually and doing business as Pine Crest Apartments, Provident Realty Advisors, Inc., and Associated Industries Insurance Company, Inc. All costs of this appeal are assessed to Plaintiff, Arlisa Batiste.

**AFFIRMED.**

ARLISA BATISTE

VERSUS

ERIN COVINGTON, LP, PROVIDENT
REALTY ADVISORS, INC., AND
ASSOCIATED INDUSTRIE
INSURANCE COMPANY, INC.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0261

WHIPPLE, C.J. DISSENTING.

I disagree with the holding of the majority opinion herein. The affidavits of the two eye witnesses to plaintiff's fall establish that plaintiff slipped in a slimy, watery, oily substance. The expert testimony offered by plaintiff establishes that the leak "more likely than not was present for some time prior to the accident," which created a "build-up of mud, oil, and the formation of slime" that was more probably than not caused by an "underground piping leak." Based upon his personal observations, the expert determined that the leak had been unattended and unrepaired for "some time" prior to plaintiff's fall. The property manager's affidavit established that she generally drove through the property on a quarterly basis to inspect "from a big picture perspective."

On review, I find that issues of whether the inspection procedures were adequate and reasonable, considering the evidence of the extent of accumulated mud and slime growth, the expert testimony regarding an ongoing leak of some duration, and the lay testimony presented, remain in dispute rendering this matter inappropriate for summary judgment.

Because I find that disputed material issues of fact remain such that this matter is not ripe for summary judgment, I respectfully dissent.